R. S. MARCUM *v.* R. L. POTTER *et al.*

(*Knoxville.* September Term, 1922.)

1. **SALES.** Purchaser of horses falsely warranted as halter broken held entitled to full value for their death, resulting from wildness while being led.

While "the loss directly and naturally resulting . . . from the breach of warranty, the measure of damages provided by Uniform Sales Law, section 69 (6), is ordinarily the difference in the price of the article as warranted and as delivered, a purchaser of horses, which were so wild that they killed themselves while he was attempting to take them home by halters, could recover their full value as damages for the seller's breach of warranty that they were halter broken. (*Post, pp.* 253, 254.)

Acts cited and construed: Acts 1919, ch. 118, sec. 69.

2. **APPEAL AND ERROR.** Concurrence of chancellor and court of civil appeals conclusive as to facts.

Concurrence of the chancellor and court of civil appeals that there was a breach of warranty and express deception of the purchaser is conclusive on the supreme court. (*Post, p.* 255.)

---

FROM SCOTT.

---

*On profits lost from inability to use horses as element of damages for breach of warranty, see notes in 43 L. R. A. (N. S.), 153 and 49 L. R. A. (N. S.), 576.

Appeal from the Chancery Court of Scott County.— HON. JOHN JENNINGS, JR., Chancellor.

DAVIS & DAVIS, for Marcum.

L. C. ELY, H. K. PEMBERTON and LUCKY, JONES & ANDREWS, for Potter & another.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

R. L. Potter, who is complainant in the cross-bill filed in this cause, on September 25, 1920, purchased from Kirby & Co. two horses at a sale conducted by them under an advertisement at Oneida, Tenn. In payment for the horses Potter issued his check on the bank at Huntsville for $281 and took possession of the horses. The complainant, R. S. Marcum, for the accommodation of Potter, indorsed this check. It was presented by Kirby & Co. to the bank at Oneida and by that bank paid. The horses which Potter purchased were warranted to be halter wise or broken. It turned out that the representation made with respect to these horses was untrue. Potter made an effort to convey the horses to his home by means of haltering them. They were so wild that one of them injured itself to such extent as that it had to be killed, and the other one fell and broke its neck.

Potter, conceiving that the warranty had been breached and that he was not liable to pay for the horses, notified the bank at Huntsville on which the check was drawn not to pay the check. Marcum then brought the original bill in this case, upon the theory that he was liable as an indorser on the check against Potter, the drawer of the check and against Kirby & Co., who had obtained the money thereon.

Potter in his answer admitted his liability to Marcum, but brought a cross-bill against Kirby & Co., setting up that the quality of the horses which he bought had been misrepresented, and that they had been warranted as halter broke or halter wise, and that this warranty was untrue and breached, and he sought to recover of Kirby & Co. the amount which he paid for the stock.

The chancellor and the court of civil appeals very correctly reached the conclusion that the proof showed overwhelmingly that Kirby & Co. had warranted these horses and represented them as being halter broke, when, in truth and fact, they were wild Western horses, that had never had a halter on them at all. The chancellor gave a decree in Potter's favor for the full amount paid for the horses. His decree was modified on appeal to the court of civil appeals, that court holding that the measure of damages was the difference in the value of the horses had they been halter broken and their value as they were unhalter broken. As the proof did not show the amount of the damages on this basis, the cause was remanded in order that a reference might be had to ascertain the amount.

The case is before this court at the instance only of Potter, all other parties acquiescing in the decree of the court of civil appeals. Potter complains at the measure of damages applied by the court of civil appeals, and contends that under the facts in this case he sustained a total loss by reason of the misrepresentations and breach of warranty of the Kirbys, and that that constitutes the measure of damages.

We agree with the contention made on behalf of Potter. It is provided by our Uniform Sales Law (Pub. Acts 1919, chapter 118, section 69[6]) that "the measure of damages

for breach of warranty is the loss directly, and naturally
resulting, in the usual course of events, from the breach
of warranty." Ordinarily, of course, this loss is ascer-
tained by applying the rule of the difference in price of
the animal as warranted and the price as delivered. But
this rule is not an invariable one. The purpose of the
rule is to ascertain the true amount of the loss actually
and directly sustained. Here these animals were war-
ranted to be halter broken, which, according to the evi-
dence, means that they have been already made accus-
tomed to being haltered and handled with a halter. The
purchaser, assuming this to be true, undertook to convey
the animals by the use of halters. He accepted the ani-
mals with this understanding, and had the right to do so
under the representations and warranties made. While
attempting to convey the animals by means of halters,
and as he had the right to do, they destroyed themselves
by reason of not having the qualities which they were
represented to have, and thereby they became an abso-
lute loss, not by reason of any fault of the purchaser, but
because he was deceived and misled by the misrepresenta-
tions of the seller. In other words, their loss was the re-
sult of the existence of conditions against which the
seller warranted the animals.

The theory of the court of civil appeals and that insisted
upon by counsel for Kirby is that, before a purchaser can
recover the full value of the animals warranted, he must
have offered to rescind or return the property. Of course,
a purchaser of property cannot keep the property in a
defective condition and also recover the full value; but
we do not have such a case to deal with. He had no op-
portunity to return the animals or to offer to rescind, and

Marcum v. Potter.

he was not permitted to keep the animals, all of which resulted from facts against which the animals were warranted.

We are concluded by the concurrence of the chancellor and the court of civil appeals, not only that there was a breach of warranty in this case, but express deception practiced. This deception misled the purchaser, and this deceit resulted in the loss of the property entirely, and operated to prevent the purchaser from offering to return the property or obtaining a rescission of the trade.

There was no error in the decree of the chancellor, and it will be in all things affirmed. The decree of the court of civil appeals will therefore be modified, so as to conform to affirmation of the decree of the chancellor. Kirby & Co. will pay all the costs incident to the appeal and to the proceedings in this court. The costs of the court below will be paid as decreed by the chancellor.